UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DIANA MAYA, ) | |
| ) | |
| Plaintiff, ) | Case: 1:24-cv-12281 |
| ) | |
| v. ) | |
| ) | |
| BROOKFIELD PROPERTIES RETAIL ) | |
| INC., ) | Jury Trial Demanded |
| ) | |
| Defendant. ) | |

# COMPLAINT

Plaintiff, Diana Maya ("Plaintiff"), by and through the undersigned counsel, hereby files this Complaint against Brookfield Properties Retail Inc. ("Defendant"), and in support states as follows:

## NATURE OF PLAINTIFF'S CLAIMS

1. This lawsuit arises under the Civil Rights Act of 1964, as amended, 42 U.S.C. §1981 ("Section 1981"), Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e *et seq.* ("Title VII"), seeking redress for Defendants national origin-based discrimination, sex-based discrimination, national origin-based harassment, sexual harassment, and retaliation under Title VII.

## JURISDICTION AND VENUE

2. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1331.

3. Venue of this action properly lies in the Northern District of Illinois, Eastern Division, pursuant to 28 U.S.C. §1391(b) insofar as Defendant operates and transacts business in this judicial district and the events giving rise to Plaintiff's claims occurred within this District.

## ADMINISTRATIVE PREREQUISITES

4. All conditions precedent have been fulfilled or been complied with.

5. Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") (attached hereto as Exhibit "A").

6. Plaintiff received a Notice of Right to Sue from the EEOC (attached hereto as Exhibit "B").

7. This Complaint has been filed within ninety (90) days of his receipt of the EEOC's Dismissal and Notice of Right to Sue.

## THE PARTIES

8. At all times material to the allegations of this Complaint, Plaintiff, Diana Maya, resides in Cook County, Illinois.

9. At all times material to the allegations in this Complaint, Defendant, Brookfield Properties Retail Inc., is a corporation doing business in and for Cook County, Illinois, whose address is 350 N Orleans Street Suite 300, Chicago, Illinois 60654-1607.

10. Plaintiff was employed by Defendant as an "employee" within the meaning of 42 U.S.C §2000e(f).

11. During the applicable limitations period, Defendant has had at least fifteen employees, has been an "employer" as defined by Title VII, and has been engaged in an industry affecting commerce within the meaning of Title VII, 42 U.S.C. § 2000e(b).

## BACKGROUND FACTS

12. Plaintiff worked for Defendant as a talent acquisition partner from January 18, 2022, through March 26, 2024.

13. Since at least June 2022 through March 26, 2024, Defendant has subjected Plaintiff

to different terms and conditions of employment than others not within her protected class and has been subjected to a hostile work environment on the basis of national origin and sex, violating Title VII and Section 1981.

14. Plaintiff is Hispanic female and is a member of a protected class because of their national origin and sex whom Defendant subjected to different terms and conditions of employment than others not within her protected class.

15. When Plaintiff assumed her position, Plaintiff was reporting to a director named Brandon Bates ("Mr. Bates").

16. Every employee on Plaintiff's team was permitted to work only one day/week from home.

17. However, Mr. Bate's friend, David Tollar ("Mr. Tollar"), who Mr. Bates hired on shortly before Plaintiff was hired, was permitted to work fully remote because he was based in Texas.

18. Mr. Bates began making sexual and inappropriate comments to Plaintiff's female co-worker, Annalise Vujica ("Ms. Vujica").

19. For example, Mr. Bates would tell her she was beautiful and that she reminded him of his wife.

20. These inappropriate comments made Plaintiff and her coworkers uncomfortable.

21. In or around June 2022, Plaintiff's team went out for lunch without the directors and Ms. Vujica told Plaintiff and the team that Mr. Bates had told her he wanted to have sex with her.

22. This type of sexual harassment raised alarms for Plaintiff and the team because they worked within the Human Resources Department.

23. Therefore, Plaintiff reported this to the Head of HR, Kathy Rugebrect ("Ms. Rugebrect").

24. Rather than rectify the problem, Defendant brought in an attorney in or around late June or early July 2022 to speak with the team of recruiters about "gossiping in the workplace" and how gossip in the workplace is toxic.

25. Notably, only the female recruiters were required to attend this virtual "training"; Mr. Tollar was not present.

26. This was the beginning of a long chain of events in which Plaintiff would be labeled as "dramatic" or a "gossip" as a result of opposing discrimination in the workplace.

27. In or around August 2022, Mr. Bates told Plaintiff he only reached out to Plaintiff and Ms. Vujica because they were smiling in our LinkedIn photos.

28. Plaintiff reported this to Ms. Rugebrect and she said she would address it, but nothing came of it.

29. This again was another example of how Defendant failed to take Plaintiff's concerns seriously by dismissing her reports of sexual harassment.

30. In or around January 2023, Mr. Bates hired another recruiter onto the team, Conor Molloy ("Mr. Molloy").

31. Shortly after, Mr. Bates departed from Defendant.

32. Plaintiff wasn't sure if he had been let go.

33. Subsequently, Mr. Tollar was promoted to a Senior Recruiter.

34. Plaintiff expressed to Mr. Tollar her desire to grow into an HR Business Partner role and move away from recruiting.

35. In or around February 2023, Plaintiff received a predominantly positive

4

performance evaluation.

36. However, even though Mr. Bates had already left the company, he made sure to put that Plaintiff was a "gossip" in her review in retaliation for Plaintiff bringing up the harassment claims against him.

37. Around the same time, Plaintiff found out from Talent Acquisition Coordinator, Carlene Jones ("Ms. Jones"), that even though Mr. Molloy (Caucasian male) had two years' less experience than Plaintiff did in recruiting, he was offered and paid $13,000 more than Plaintiff was.

38. Ms. Jones told Plaintiff this information so that Plaintiff could raise the issue and make it right.

39. However, Plaintiff sat on this information for a while because she didn't want to get Ms. Jones in trouble for telling Plaintiff.

40. In or around Summer 2023, Ms. Jones left the company.

41. In or around September 2023, Defendant had a "Reduction-in-Force" and let go of a black female recruiter (Jeanine Knight) allegedly because they didn't have enough space on the team.

42. Around the same time, Mr. Tollar was promoted to a management position.

43. In or around October 2023, Plaintiff had her quarterly performance review with Mr. Tollar.

44. Plaintiff again received positive feedback on her performance.

45. At that time, Plaintiff informed Mr. Tollar that she knew about the pay discrepancy between Mr. Molloy and herself and felt that she was being discriminated against due to her Hispanic national origin and sex in light of Plaintiff's superior experience.

46. In response, Mr. Tollar stated that Ms.Jones never should have told Plaintiff that and the pay gap wasn't discriminatory.

47. Rather, Mr. Molloy was just a "different level" of recruiter.

48. Plaintiff asked how when she, in fact, had more requisitions than Mr. Molloy - Plaintiff was in charge of hiring more people than he was.

49. Mr. Tollar did not have a response to Plaintiff's remark.

50. Notably, not only was Mr. Molloy paid better, but he was also permitted to work from home two days/week, whereas Plaintiff was limited to one.

51. Shortly after this, Mr. Molloy began asking Plaintiff how she felt about her job security after the Reduction-in-Force and told Plaintiff, "just so you know, Pria (the Vice President of HR) doesn't like you because she thinks you're a gossip."

52. Plaintiff asked if Pria had told Mr. Molloy that and he stated yes, they had had conversations.

53. Also in October 2023, Plaintiff was pulled into a meeting with Pria Cochran ("Ms. Cochran").

54. Ms. Cochran stated she heard Plaintiff had been discussing pay around the office.

55. Plaintiff told Ms. Cochran that Plaintiff hadn't but even if Plaintiff had, it is illegal to prohibit employees from discussing pay.

56. Then, Ms.Cochran said she heard Plaintiff was making racial comments about white people.

57. Plaintiff asked if Ms. Cohcran had witnesses for that because that was completely unfounded.

58. Ms.Cochran stated that it was a conversation, not an investigation, and Plaintiff

6

never heard about the accusations again.

59. In or around February 2024, Mr. Molloy informed Plaintiff that when Mr. Tollar came up for in-person performance reviews, he and Mr. Tollar planned to go to dinner with Conor's friend, who wanted to work for the company as a recruiter.

60. Plaintiff asked why Defendant would be hiring a recruiter if we had just let go of Jeanine because there wasn't enough space on the team.

61. Mr. Molloy again asked Plaintiff about whether Plaintiff felt safe and secure in being able to keep her position for another year.

62. During the February 2024 performance review process, Plaintiff asked for a raise to make her pay equal to Mr. Molloy 's, as well as voiced Plaintiff's desire to move up into a Senior Recruiter and/or HR Business Partner position.

63. Despite continued positive feedback, Plaintiff was denied on both grounds.

64. Plaintiff again informed Mr. Tollar she felt discriminated against due to the pay gap, as well as harassed by Mr. Molloy about Plaintiff's job security.

65. The next day, Plaintiff had a conversation with Ms. Cochran about the same issues.

66. In or around March 2024, Plaintiff was pulled into a meeting with Ms. Rugebrect after sending her an email about these issues, among others.

67. Plaintiff told Ms.Rugebrect that she had experienced a lot of harassment and retaliation during Plaintiff's tenure and felt as if her claims were not taken seriously.

68. Additionally, Plaintiff reiterated her complaint about the pay discrepancy between Mr. Molloy and Plaintiff and stated she felt discriminated against as a Hispanic female.

69. In response, Ms. Rugebrect told Plaintiff that Mr. Molloy was just a better recruiter.

70. Furthermore, Ms. Rugebrect also told Plaintiff that Plaintiff didn't know what the

words "discrimination" and "harassment" meant and proceeded to read definitions of those words from the internet.

71. Plaintiff said, "Kathy, as an HR leader you should know that it is not a one size fits all, I come from a marginalized community, your experience is not going to be the same as mine, nor has it been."

72. Ms.Rugebrect responded that she already terminated Mr. Bates because of Plaintiff's "issues" with him and now Plaintiff was complaining about her team again.

73. Ms. Rugebrect said, "it's just never-ending." She asked, "Are you sure you want to pursue this investigation? You are going to destroy peoples' careers."

74. Then, Ms. Rugebrect told Plaintiff that Plaintiff would never grow in her career or be promoted to an HR Business Partner because Plaintiff was dramatic, drama followed Plaintiff, Plaintiff was a gossip, and being in HR wasn't "in my wheelhouse."

75. These comments displayed the misogynistic view of Plaintiff despite her legitimate reports of concerns regarding the workplace with discrimination and/or harassment.

76. Following those comments, Plaintiff shut down.

77. To further insult Plaintiff, Ms. Reugebrect stated that no one should be working in the HR Department without their Bachelor's degree as Plaintiff only has her Associate's.

78. On or around March 19, 2024, Plaintiff submitted her two weeks' notice and resigned.

79. In Plaintiff's resignation letter, Plaintiff stated it was due to discrimination, harassment, and retaliation relating to race, national origin, and gender, as well as Ms. Rugebrect's minimization of the same in their meeting.

80. On or around March 21, 2024, Plaintiff received a call from Defendant's attorney

8

terminating Plaintiff's employment immediately.

81. Plaintiff met or exceed Defendant's performance expectations during the entire duration of her employment as noted in each of her performance evaluations.

82. Ultimately, Plaintiff was unlawfully terminated because of her national origin and sex, (Hispanic Female) on March 21, 2024.

83. Plaintiff was retaliated against, and her employment was ultimately terminated for opposing unlawful discrimination and for exercising her protected rights.

84. Plaintiff reported the race-based harassment to Defendant.

85. Plaintiff suffered multiple adverse employment actions including, but not limited to being terminated.

86. There is a basis for employer liability for the race-based harassment that Plaintiff was subjected to.

87. Plaintiff can show that she engaged in statutorily protected activity –a necessary component of her retaliation claim- because Plaintiff lodged multiple complaints about harassment and/or discrimination to both managers and Human Resources.

## COUNT I
### Violation of 42 U.S.C. § 1981
### (National Origin-Based Discrimination)

88. Plaintiff repeats and re-alleges paragraphs 1-87 as if fully stated herein.

89. Section 1977 of the Revised Statutes, 42 U.S.C. § 1981, as amended, guarantees persons of all races, colors, and national origin the same right to make and enforce contracts, regardless of race, color, or national origin. The term "make and enforce" contracts includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

9

90. Defendant's conduct against Plaintiff's national origin amounts to a pattern or practice of systemic national origin discrimination that constitutes illegal intentional national origin discrimination in violation of 42 U.S.C. Section 1981.

91. Plaintiff was subjected to and harmed by Defendant's systemic and individual discrimination.

92. Defendant's unlawful conduct resulted in considerable harm and adverse employment actions to Plaintiff and is entitled to all legal and equitable remedies under Section 1981.

93. As a direct and proximate result of the national origin-based discrimination described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of other employment benefits and has suffered and continues to suffer mental anguish, distress, humiliation and loss of enjoyment of life.

## COUNT II
### Violation of Title VII of the Civil Rights Act of 1964
### (National Origin-Based Discrimination)

94. Plaintiff repeats and re-alleges paragraphs 1-87 as if fully stated herein.

95. By virtue of the conduct alleged herein, Defendant intentionally discriminated against Plaintiff based of Plaintiff's national origin, in violation of the Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq*.

96. Plaintiff met or exceeded performance expectations.

97. Plaintiff was treated less favorably than similarly situated employees outside of Plaintiff's protected class.

98. Defendant terminated Plaintiff's employment on the basis of Plaintiff's national origin.

99. Plaintiff is a member of a protected class under the Title VII, due to Plaintiff's national origin, Hispanic.

100. Defendant acted in willful and reckless disregard of Plaintiff's protected rights.

101. As a direct and proximate result of the discrimination described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of employment benefits and has suffered and continues to suffer mental anguish, distress, humiliation and loss of enjoyment of life.

**COUNT III**
**Violation of Title VII of The Civil Rights Act of 1964**
**(National Origin-Based Harassment)**

102. Plaintiff repeats and re-alleges paragraphs 1-87 as if fully stated herein.

103. By virtue of the conduct alleged herein, Defendant engaged in unlawful employment practices and subjected Plaintiff to national origin-based harassment, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq*.

104. Defendant knew or should have known of the harassment.

105. The national origin-based harassment was severe or pervasive.

106. The national origin-based harassment was offensive subjectively and objectively.

107. The national origin-based harassment was unwelcomed.

108. Plaintiff is a member of a protected class under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*, due to Plaintiff's national origin, Hispanic.

109. Defendant acted in willful and reckless disregard of Plaintiff's protected rights.

110. As a direct and proximate result of the national origin-based harassment described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of other employment benefits and has suffered and continues to suffer mental anguish, distress,

humiliation and loss of enjoyment of life.

## COUNT IV
### Violation of Title VII of the Civil Rights Act
### (Sexual Harassment)

111.    Plaintiff repeats and re-alleges paragraphs 1-87 as if fully stated herein.

112.    By virtue of the conduct alleged herein, Defendant engaged in unlawful employment practices and subjected Plaintiff to sexual harassment, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq*.

113.    Defendant knew or should have known of the harassment.

114.    The sexual harassment was severe or pervasive.

115.    The sexual harassment was offensive subjectively and objectively.

116.    The sexual harassment was unwelcomed.

117.    Plaintiff is a member of a protected class under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*, due to Plaintiff's sex, female.

118.    Defendant acted in willful and reckless disregard of Plaintiff's protected rights.

119.    As a direct and proximate result of the sexual harassment described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of other employment benefits and has suffered and continues to suffer mental anguish, distress, humiliation and loss of enjoyment of life.

## COUNT V
### Violation of the Title VII of the Civil Rights Act of 1964
### (Sex-Based Discrimination)

120.    Plaintiff repeats and re-alleges paragraphs 1-87 as if fully stated herein.

121.    By virtue of the conduct alleged herein, Defendant intentionally discriminated against Plaintiff based of Plaintiff's sex, in violation of the Title VII of the Civil Rights Act

of 1964, as amended, 42 U.S.C. § 2000e, *et seq*.

122. Plaintiff met or exceeded performance expectations.

123. Plaintiff was treated less favorably than similarly situated employees outside of Plaintiff's protected class.

124. Defendant terminated Plaintiff's employment on the basis of Plaintiff's sex.

125. Plaintiff is a member of a protected class under the Title VII, due to Plaintiff's sex.

126. Defendant acted in willful and reckless disregard of Plaintiff's protected rights.

127. As a direct and proximate result of the discrimination described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of employment benefits and has suffered and continues to suffer mental anguish, distress, humiliation and loss of enjoyment of life.

## COUNT VI
### Violation of Title VII of The Civil Rights Act of 1964
### (Retaliation)

128. Plaintiff repeats and re-alleges paragraphs 1-87 as if fully stated herein.

129. Plaintiff is a member of a protected class under 42 U.S.C. § 2000e, *et seq*.

130. During Plaintiff's employment with Defendant, Plaintiff reasonably complained to Defendant about conduct that constituted national origin-based or sex-based discrimination and national origin-based or sexual harassment.

131. As such, Plaintiff engaged in protected conduct and was protected against unlawful retaliation by Defendant under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq*.

132. In response to Plaintiff's complaint, Defendant failed to conduct a prompt, thorough and objective investigation of Plaintiff's complaints of discrimination or harassment.

133. Defendant also failed to take necessary precautions to prevent further recurrences of the discriminatory and harassing conduct complained of by Plaintiff.

134. Plaintiff suffered an adverse employment action in retaliation for engaging in protected activity.

135. By virtue of the foregoing, Defendant retaliated against Plaintiff based on Plaintiff's reporting the discrimination or harassment, thereby violating Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, *et seq*.

136. Defendant's retaliatory conduct toward Plaintiff illustrated a willful and/or reckless violation of Title VII.

137. As a direct and proximate result of the above-alleged willful and/or reckless acts of Defendant, Plaintiff has suffered damages of a pecuniary and non-pecuniary nature, humiliation, and degradation.

## RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully requests that this Court find in Plaintiff's favor and against Defendant as follows:

    a. Back pay with interest;

    b. Payment of interest on all back pay recoverable;

    c. Compensatory and punitive damages;

    d. Reasonable attorneys' fees and costs;

    e. Award pre-judgment interest if applicable; and

    f. Award Plaintiff any and all other such relief as the Court deems just and

proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby requests that all issues be submitted to and determined by a jury.

Dated this 27th day of November 2024.

/s/ *Chad W. Eisenback*
**CHAD W. EISENBACK, ESQ.**
IL Bar No.: 6340657
**SULAIMAN LAW GROUP LTD.**
2500 S. Highland Avenue, Suite 200
Lombard, Illinois 60148
Phone (331) 307 - 7632
Fax (630) 575 - 8188
ceisenback@sulaimanlaw.com
*Attorney for Plaintiff*